Good morning, Your Honors. My name is Nancy Miller and I represent the petitioners in this matter. When an alien is brought before an immigration judge, they look to the judge for fairness and objectivity in order to have an impartial and a fair decision. The judge allows her bias and her prejudice to interfere with her ability to analyze, to even conduct the hearing. The alien's rights are destroyed. The alien is cheated of due process. Well, that's all true, of course, but the question here is whether the I.J. was biased or simply insensitive, and whether the insensitivity, assuming that's what it was, had any effect on the findings. MILLER Well, I think, Your Honor, that it goes beyond insensitivity. She, aside from the fact that she continually told him, man, you don't look Chinese to me, she had her own view of what Chinese people should look like or what someone who has any Chinese blood in them should look like. But, of course, the petitioner is the one who brought that subject up by saying he was perceived to look Chinese. So, I mean, in effect, he started it. And she, I mean, I'm not defending her, what she, sort of how she approached the problem, but, if anything, she was primarily insensitive to counsel for the INS. GINSBURG Her attitude there, I grant you, was shameful. But it didn't reflect on any, I mean, her findings had nothing to do with whether he did or didn't look Chinese to her or to anybody else. MILLER I think they did, Your Honor. GINSBURG In what respect? MILLER Well, I think that the fact that she had decided that he didn't look Chinese made her also decide that the fact that he said that he had been mistaken for being Chinese, which is not all that unusual for someone who is Manadanese because they do have some Chinese ethnic heritage in them, made her decide that he was lying. And when she decided that he was lying to her in that instance, it was pervasive. She decided he was lying throughout. GINSBURG She never said that. MILLER I think she did.  GINSBURG Okay. that he said about when he came to the United States and why he had decided either not to file for asylum immediately or went back and forth in his deciding, when she utterly dismissed any information about the difficulties that Chinese people or people who have received Chinese experience in Indonesia, when she cut off the pastor's testimony about the problems in Indonesia. When in her decision, she made a statement about how, and I know that I'm paraphrasing, but she made the statement about how it was strange that someone who would not be caught dead being connected to a particular group in Indonesia would attempt to use that information or to use that connection to apply for asylum. And I think it went farther than that, because having decided that he was lying and then having discounted all of that information, she then went ahead and discounted all of the information about his difficulty as a Christian, and she never disputed the fact that he is, in fact, a Christian. There was nothing in there that was questioned at all. But she just discounted it because her attitude was, This man is lying to me. He's claiming to be Chinese, or he's claiming to look Chinese, and he's trying to pull something over on me, and because he's trying to do that, he's not believable. And I think that it pervaded her entire conduct and the entire case. And I think that it was serious enough that he was, in fact, denied due process. He didn't claim to be Chinese, though, did he? He just claimed to be ethnically different from the Indonesians and to look like a Chinese. What he claimed to be, what he said he is, is Manedanese, and there was testimony that people from Manado are in part descended from the Ming Dynasty, and so have some Chinese ethnic heritage in them. So it would not, in fact, be unusual for someone to look Chinese or to have some resemblance to Chinese or to look not native Indonesian. Would you like to save the rest of your time for rebuttal? No, Your Honor. I would like to raise a few other issues. Okay. The issue, most of the issue, of course, relates to whether or not the petitions were denied due process, and that goes to the judge's conduct. I think we also have to look, however, to the area of his claim of Christianity and the judge's dismissal of his claim in terms of whether or not there was a pattern of practice of difficulty or of violence and bigotry against Christians in Indonesia. I think that she gave that tremendous short shrift as well because, and again coming back to the fact that she was dismissing everything that he said. How much evidence was there of persecution of him individually as opposed to anti-Christian or anti-Chinese? I didn't hear the first part of your question. I'm sorry, Your Honor. I say how much evidence was there as to him personally being persecuted? There was not a tremendous amount of evidence of him being persecuted personally. He did talk about having lost jobs. He talked about having had incredible difficulty performing his jobs because of bigotry and the bias that he incurred in Indonesia. In his application, he also talked about having been at churches that were stoned and having difficulty in that aspect. However, he also talked about having his cousins who were Christians beaten after he had left. The background information is full of information about the difficulty that Christians incur in Indonesia. And the judge herself even said that she didn't question that, but then she went ahead and dismissed his claim as not having a pattern of practice. She didn't even deal with whether or not he was in any way a disfavored group, which would, under a case that had just recently come down from the Ninth Circuit, lower his burden of showing whether or not he had any personal problems or the personal problems that he needed to show. She had decided he was lying, and she had left it from there. And I will reserve the rest of my time for a vote. Okay. Good morning, Your Honors. I'm Carol Federighi. I represent the Respondent, Attorney General Gonzalez, in this matter. This case is remarkable for the amount of time that the immigration judge gave the petitioners to prepare and present their case and the enormous patience and fairness that the judge exhibited. Petitioners filed their asylum application with INS in August of 1999. They then had an interview with an asylum officer in October of 1999. They first appeared before the immigration judge in November of 1999. She then held a total of seven other brief hearings, basically sort of status hearings, each time giving petitioners at their request a continuance for another hearing in order for her to prepare documents to deal with document issues or, in some cases, to deal with attorney's scheduling issues. She never denied them a request for continuance. The merits hearing itself did not begin until a year and a half after they first appeared before the immigration judge in April of 2001. When it became clear that testimony was not going to be able to be wrapped up in that day, she extended the hearing to another day in July and even gave petitioners the opportunity to come forward with more witnesses on that date if they wanted to. She then, after the testimony closed, she then set yet a third date for closing arguments in the case and issued her decision on that date. After all this process and due deliberation by the judge, she determined first that the asylum application, which was filed four years after petitioners entered the country, that it was untimely. She held that in the alternative, even if the asylum application was timely, that petitioners had not established past persecution or well-founded fear of future persecution or torture by the government and therefore denied their claims for relief. The board then affirmed and adopted this opinion. In my argument, I'm going to talk about what the immigration judge held or said, but realized that the board adopted that opinion, so it's essentially equivalent to a decision by the board. I'll just talk about the immigration judge because she's the one that wrote the opinion. First, this court does not have jurisdiction to review the immigration judge's determination that the asylum application was untimely. Petitioners concede as much in their brief. However, they say, they argue that in this case, the court does have jurisdiction because there's due process violations, so the court should have jurisdiction to look at the due process issue. However, the due process issues, there are no meritorious due process issues in this case. As I've explained, the petitioners were given ample process, ample opportunity to present their case. Petitioners have argued that the judges must do this. The judge, even despite all the process, made comments which suggested that from the petitioner's perspective that she was biased. The judge did ask questions about the petitioner's appearance, but as Your Honor pointed out earlier, petitioners had put that issue into play in the case by claiming that even though they are not ethnically Chinese, that they are perceived to be Chinese by Indonesians, and therefore that they would experience mistreatment on that basis. So the issue of their appearance was put into play in the case by them. The judge obviously did not herself think that he looked Chinese, and wanted to explore why he thought the Indonesians thought he looked Chinese. And so that's what the questioning was designed to get at. It was handled in a maybe less sensitive manner than it could have been, but certainly because the issue was put into play, it was a proper line of questioning. And then as Your Honor's pointed out in the end, if you read the immigration judge's opinion, she does accept their claim that the Manadanese may be perceived as Chinese, and doesn't question that. What she found was that they had not established that Manadanese who are perceived as Chinese experienced mistreatment on that basis. And that they experienced persecution in Indonesia. So in the end, she accepted the claim based on their appearance, but found that it did not establish that they experienced persecution. They also complained that some of the questioning was unduly harsh or excessive, that maybe she asked too many questions. But the immigration judge under statute is permitted and even encouraged to ask questions to flesh out an alien's claim. In this case, she was questioning the petitioners to get at the specifics of their claim. Their original testimony was very vague about, well, I couldn't get documents I needed in my job, or I just had problems. And she wanted to get at specific incidents. She managed to elicit specific dates and incidents which petitioner's counsel had not managed to elicit. So in fact, she helped them develop their case. So certainly that kind of questioning is proper. In any event, these claims do not rise to the level of a substantive due process issue. Therefore, this court does not have jurisdiction to review the immigration judge's determination that the asylum application was untimely. This claim, that issue is dispositive of the asylum claim. Therefore, the court does not need to go and reach the merits of the asylum claim. And I just want to point out, this isn't a Lanza case, if that's a concern of your honors. Because in this case, the board adopted the immigration judge's opinion. It's not an affirmance without opinion situation. As I said, the court doesn't need to reach the merits of the asylum claim. I'm going to go on and address the merits of their withholding of removal claim, but also fold into that the asylum standard. It's not very surprising, though, that this kind of questioning or kind of insensitive conduct on the part of the judge would lead to this, to the objections that have been raised here, don't you think? You don't find this surprising, do you? But that they have objected on due process grounds to the line of questioning? To this sort of questioning. I'm never surprised when someone raises a complaint in connection with a case. So it's not that I'm not surprised, but I don't believe it has any merit. As I said, they raised the issue of their appearance being significant to their claim. And the judge, therefore, was perfectly legitimate for the judge to explore that issue. As I said, she perhaps did it in a less than sensitive way by pointing to the INS counsel and the shape of her eyes and trying to compare them with the petitioner's eyes. But INS counsel said she did not take offense at the line of questioning. And as I said, the petitioner said, I look Chinese, or the Indonesians think I look Chinese. And if the judge doesn't believe that he looks Chinese, she needs to get at what's going on here and why he thinks that the Indonesians are picking on him because he looks Chinese. So it was fair to her to go into that issue of what he looked like. I don't think that that issue colored the rest of her decision the way that petitioner claimed in the argument that it did. I think that she then put that aside and moved on to, well, what are the merits of the case and what's really going on here, and looked at that and found that there was no merit to the actual claim for relief. She found him lacking credibility just on the limited issue of whether he filed his asylum application in a timely fashion, and that the court does not have jurisdiction to review. That lack of credibility, finally, did not carry over to the rest of the case. And I don't believe that or the appearance issue colored her decision at all. If you look at what he claimed to have experienced in the past, or what petitioners experienced in the past, that clearly does not rise to the level of past persecution. They merely experienced job-related discrimination. There was one incident where the male petitioner said that he had gotten into a scuffle with some people that he ran into on a lunch break. That occurred in 1999, and it's not clear if it was sort of a mutually initiated scuffle or whether they were really picking on him. Other than that, there's no physical incidents at all, merely job discrimination. The immigration judge properly concluded that that did not rise to the level of past persecution. That was the parents-based claim, or the Chinese-based claim. As far as Christianity, any past persecution on the basis of Christianity, there was hardly any evidence of that. In the record, there was just some comments, some in the application itself, that there had been some stoning in the past. But other than that, really limited evidence. She also properly concluded there was no well-founded fear of future persecution on either basis. The incidents experienced by their relatives, those people were ministers or evangelists. They had a high profile. Petitioner's not in that category. There's no reason he would experience persecution as a Christian. For that reason, Your Honor, we believe the immigration judge's decision was a decision to be upheld. Thank you. All right. Thank you, counsel. Ms. Miller? Thank you, Your Honor. No one is saying that the judge didn't give this case a great deal of time. It's what she did with it during that time. This court does have jurisdiction to review the issue of the one-year policy because of the fact that there was a due process violation. This court has repeatedly held that due process violations and constitutional violations are reviewable by the court, despite the fact that Congress may attempt to preclude review of a particular issue. St. Cyr talks about that. Gutierrez-Chavez talks about that. There are several other cases that have held that even if a case is dealing with a waiver or something else where Congress has, in fact, precluded judicial review, if the claim is of a constitutional nature, of a due process nature, the court has jurisdiction to review that issue. That is the situation here, and that is why this court has jurisdiction. And that very fact makes the issue of the asylum claim appropriate to discuss because of the fact that if she had not wrongly deprived the Petitioners of due process, they would, in fact, have potentially had a different determination of the one-year issue, and she would have then been able to discuss the asylum instead of dismissing it out of hand. I thank you, Your Honor.  Thank you. Counsel, the matter just argued will be submitted. We'll next hear argument in Johnson v. Krumme. Thank you. Ms. Carlson?
judges: Browning, Cudahy, Rymer